UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

PATCH OF LAND LENDING, LLC,

    Plaintiff,

v.

MAYFAIR REAL ESTATE, LLC, et al.,

    Defendants.

Case No. 2:17-cv-483
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Kimberly A. Jolson

## OPINION AND ORDER

This matter is before the Court on the motions for summary judgment filed by Plaintiff Patch of Land Lending, LLC (POL Lending), Defendant/Cross-Claimant Jon Peterson, Treasurer of Delaware County, Ohio (the Treasurer), and Defendant/Counterclaimant/Cross-Claimant Omega Federal Credit Union (Omega) (ECF Nos. 55, 58, 59). For the following reasons, these motions are **GRANTED**.

I.

A. **Procedural Background**

Plaintiff POL Lending brought this action on June 6, 2017, against Defendants Mayfair Real Estate, LLC (Mayfair), A. David Wiggins (Mr. Wiggins), the Treasurer, and Omega. (Compl. at 1–2, ECF No. 1.) POL Lending brings three claims: (1) breach of note (against Mayfair); (2) breach of guaranty (against Mr. Wiggins); and (3) mortgage foreclosure (against Mayfair, the Treasurer, and Omega). (*Id.* at 8–16.) Through this case, POL Lending seeks to foreclose on and determine the priority of interests in the real property commonly known as 458 West Orange Road, Delaware, Ohio 43015 (Property Identification Number 318-233-03-014-

001) (the Property). (*See id.* at 16–17.)

The Treasurer answered the Complaint and brought a cross-claim under O.R.C. §§ 323.25 and 5721.18, *et seq.*, seeking a determination of interests in the Property and foreclosure on and sale of the Property to recover delinquent real estate taxes, interest, assessments, and penalties. (Treasurer Answer at 2, ECF No. 6.)

Omega answered and brought a counterclaim against POL Lending and cross-claims against Mayfair, Mr. Wiggins, Emily C. Wiggins (Mrs. Wiggins) (collectively, the Wigginses), and the Treasurer. (Omega Answer at 6–16, ECF No. 25.) Like POL Lending and the Treasurer, Omega seeks a determination of interests in the Property. (*See id.* at 10, 16.) Omega also seeks foreclosure on and sale of the Property as relief for the Wigginses' default on the mortgages Omega holds on the Property. (*See id.*)

POL Lending, the Treasurer, and Omega have now moved for summary judgment. They each request, among other things, foreclosure on and sale of the Property. (*See* POL Lending Mem. in Supp. at 12, ECF No. 56; Treasurer Mot. for Summ. J. at 5, ECF No. 58; Omega Mot. for Summ. J. at 7, ECF No. 59.) The Treasurer requests that he be permitted to collect "as a first and best lien" from the proceeds of the sale of the Property. (Treasurer Mot. for Summ. J. at 5.) Omega does not ask the Court to assign it a specific position of priority, but it does seek a marshaling of interests in the property. (*See* Omega Mot. for Summ. J. at 7; Omega Answer at 10, 16.) POL Lending explicitly asks the Court to determine the priority of each party's interests. (POL Lending Mem. in Supp. at 12.)

No responses or replies to the motions for summary judgment were filed.

2

B.  **Factual Background**

The relevant facts are undisputed.

1. **Facts Relevant to Patch of Land Lending, LLC**

On March 30, 2016, Mayfair executed and delivered to POL Lending a promissory note secured by a deed of trust for the payment of a principal amount of $1 million and interest of 11% per year on the unpaid principal balance. (Pl.'s Statement of Facts ¶¶ 7, 14, ECF No. 57.) That same day, Mr. Wiggins and Mayfair provided security for repayment of the note. (*See id.* ¶¶ 8–9.) Mr. Wiggins executed and delivered to POL Lending a guaranty, and Mayfair executed and delivered a mortgage and security agreement and fixture financing statement. (*Id.*)

In the mortgage, Mayfair granted, mortgaged, and conveyed to POL Lending all its right, title, and interest to the Property. (Pl.'s Statement of Facts ¶ 10.) POL Lending recorded the mortgage on July 14, 2016. (*Id.* ¶ 11.)

Under the terms of the promissory note, Mayfair agreed to pay POL Lending monthly interest of $9,166.67. (Pl.'s Statement of Facts ¶ 15.) Mayfair also agreed to pay a late charge of $0.18 for each dollar not paid within 10 days of its due date. (*Id.* ¶ 16.)

The promissory note states that Mayfair would be in default if it failed to pay any installment or other sum due under the note when due and payable or if Mayfair failed to perform or comply with any term, agreement, or covenant contained in the mortgage. (Pl.'s Statement of Facts ¶ 17.) Upon the occurrence of any event of default, POL Lending may declare the promissory note due and payable immediately, the promissory note bears interest equal to the lesser of 24% per year or the maximum interest allowed by law, and Mayfair must pay all reasonable costs of collection and costs, expenses, and attorney fees paid or incurred in connection with the collection or enforcement of the promissory note. (*Id.* ¶¶ 18–20.)

3

Under the terms of the guaranty, Mr. Wiggins agreed to guarantee the prompt payment of all amounts due under the promissory note (not just the collectability of those amounts) and the prompt performance of all obligations for which Mayfair has recourse liability to POL Lending under the promissory note. (Pl.'s Statement of Facts ¶ 21.) Mr. Wiggins agreed that his default under the guaranty would constitute a default under the promissory note and mortgage and would entitle POL Lending to exercise its rights and remedies under those documents. (*Id.* ¶ 23.) And Mr. Wiggins agreed to pay all of POL Lending's reasonable attorney fees, costs, and expenses if it retained an attorney to enforce the terms of the guaranty. (*Id.* ¶ 24.)

Under the terms of the mortgage, Mayfair agreed that its failure to pay any installment of principal, interest, or other payment under the promissory note within five days of its due date would constitute a default under the mortgage. (Pl.'s Statement of Facts ¶ 25.) Mayfair also agreed that a default by Mr. Wiggins on the guaranty would constitute a default under the mortgage. (*Id.* ¶ 26.)

Under the terms of the mortgage, POL Lending can obtain a judicial foreclosure in the event of a default. (Pl.'s Statement of Facts ¶ 27.) And in the event of a default, POL Lending has the right to collect and retain any rents and profits from the Property, to hold, operate, manage, and control the Property, and to take other measures regarding the Property as it deems proper or necessary. (*Id.* ¶ 28.) Mayfair agreed to reimburse POL Lending for its reasonable attorney fees and any and all costs and expenses incurred in connection with making, performing, or collecting the indebtedness or exercising any of Plaintiff's rights under the promissory note, the mortgage, or any other loan document. (*Id.* ¶ 29.)

POL Lending has performed its obligations under the promissory note, guaranty, and mortgage and has in its possession each of those documents. (Pl.'s Statement of Facts ¶¶ 30–31.)

Mayfair and Mr. Wiggins have failed to make any principal, interest, or other payment under the promissory note. (Pl.'s Statement of Facts ¶ 32.) This constitutes a default under the promissory note, the guaranty, and the mortgage. (*Id.* ¶ 33.)

POL Lending mailed a written notice of default to Mayfair and Mr. Wiggins on March 31, 2017, providing them with ten days to cure the default. (Pl.'s Statement of Facts ¶ 34.) Mayfair and Mr. Wiggins did not cure the default. (*Id.* ¶ 35.)

As of November 16, 2017, Mayfair and Mr. Wiggins owed POL Lending $1,179,993.33, which consists of the unpaid principal of $1 million, accrued and unpaid interest of $173,333.33, accumulated late charges of $1,650, unpaid late charges of $4,950, and unpaid charges of $60. (Pl.'s Statement of Facts ¶ 36.) Mayfair and Mr. Wiggins also owe non-default interest from November 17, 2017 onward of 11% per year, default interest of 24%, additional late charges, and POL Lending's costs and collection expenses, which include reasonable attorney fees. (*Id.*)

### 2. Facts Relevant to the Treasurer of Delaware County, Ohio

Mayfair has not paid the Property's real estate taxes. (*See* Tax Detail Report at 1, ECF No. 58-2.) As of January 17, 2018, the delinquent, past due, and owing real estate taxes, interest, assessments, and penalties on the Property was $21,772.98. (Bendle Aff. ¶ 4, ECF No. 58-2.)

### 3. Facts Relevant to Omega Federal Credit Union

Omega holds a mortgage on the Property from the Wigginses for $235,000. (McCaslin Aff. ¶ 3, ECF No. 60.) Omega recorded the mortgage on May 5, 2016. (*Id.*) The mortgage secures payment on a credit agreement and home equity addendum (the First Note) executed and dated April 25, 2016, for a principal amount of $235,000 from Omega to the Wigginses. (*Id.* ¶ 4.)

Omega also holds a mortgage on the Property from the Wigginses for $800,000.

5

(McCaslin Aff. ¶ 5.) Omega recorded this mortgage on June 30, 2016. (*Id.*) The mortgage secures payment on a note (the Second Note) executed on June 24, 2016, for a principal amount of $800,000 from Omega to the Wigginses. (*Id.* ¶ 6.)

The First Note states: "The security instrument you sign the same day you sign this Plan is incorporated by reference into this Plan. You must keep all promises you made in the security instrument." (First Note at 1, ECF No. 25-2.) The First Note further states that Omega "can terminate your credit line and require you to pay us the entire outstanding balance in one payment . . . if . . . [y]our action or inaction adversely affects the collateral for this Plan or our rights in the collateral. This can include . . . failure to pay taxes [or] . . . transfer of title or sale of the property . . . ." (*Id.* at 2.) And the First Note also states: "If you sell or transfer ownership without first obtaining the written consent of the Credit Union, the Credit Union may exercise its rights described in the security instrument, including the right to demand immediate payment in full of all sums secured by the security instrument." (*Id.* at 3.)

The Second Note states that the mortgage or deed of trust accompanying the note "describes how and under what conditions [the Borrower] may be required to make immediate payment in full of all amounts [owed] under this Note." (Second Note at 1, ECF No. 25-4.)

In each of the mortgages, the Wigginses agreed that "[i]f all or any part of the Property or an interest therein is sold or transferred by Borrower without Lender's prior written consent, . . . Lender may, at Lender's option, declare all the sums secured by this Mortgage to be immediately due and payable." (First Mortgage at 5, ECF No. 25-1; Second Mortgage at 5–6, ECF No. 25-3.)

The Wigginses failed to pay the Property's real estate taxes and transferred the Property to Mayfair by a quitclaim deed executed on March 30, 2016. (Prelim. Judicial Report at PageID 190, 192–93, ECF No. 3.) Omega determined that the Wigginses breached their mortgage

covenants and their obligations under the First Note by these actions. (Omega Mot. for Summ. J. at 4, 6, ECF No. 59.) Accordingly, on July 7, 2017, Omega informed the Wigginses that it was declaring all sums secured by the mortgages to be immediately due and payable. (July 7, 2017 Ltr. at 1, 5, ECF No. 25-5.) Omega gave the Wigginses thirty days to cure their breaches, (*id.* at 6), which they failed to do. (Omega Mot. for Summ. J. at 6.)

As of January 19, 2018, the total amount owed by the Wigginses under the First Note (including unpaid principal, interest, and late fees) was $234,601.74. (McCaslin Aff. ¶ 8.) Interest of $26.95 per day accrues on this amount. (*Id.*)

As of January 19, 2018, the total amount owed by the Wigginses under the Second Note (including unpaid principal, interest, and late fees) was $786,525.81. (McCaslin Aff. ¶ 9.) Interest of $95.37 per day accrues on this amount. (*Id.*)

## II.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). When the moving party has carried this burden, the nonmoving party must then set forth specific facts showing that there is a genuine issue for trial. *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009).

"After the parties have presented their evidence, 'the judge's function is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a

genuine issue for trial.'" *Moldowan*, 578 F.3d at 374 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). In evaluating the evidence, the court must draw all inferences in the light most favorable to the nonmoving party. *Id.* The nonmoving party, however, cannot establish a genuine issue for trial by producing a mere scintilla of evidence in support of its position. *Anderson*, 477 U.S. at 251; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (showing the existence of "some metaphysical doubt as to the material facts" does not create a genuine issue for trial). A genuine issue for trial exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

## A. Patch of Land Landing, LLC

POL Lending has moved for summary judgment on its breach of note, breach of guaranty, and mortgage foreclosure claims. (POL Lending Mot. for Summ. J. at 1–2, ECF No. 55.)

### 1. Breach of Note and Breach of Guaranty

POL Lending's claims for breach of note and breach of guaranty are analyzed as breach of contract claims. To prevail on these claims, POL Lending must establish "the existence of a contract, the failure without legal excuse of the other party to perform when performance is due, and damages or loss resulting from the breach." *Lucarell v. Nationwide Mut. Ins. Co.*, 152 Ohio St. 3d 453, 2018-Ohio-15, 97 N.E.3d 458, ¶ 41.

Here, the undisputed facts establish POL Lending's entitlement to summary judgment. Mayfair executed and delivered a promissory note to POL Lending. (Pl.'s Statement of Facts ¶¶ 7, 14, ECF No. 57.) Mr. Wiggins executed and delivered a guaranty. (*Id.* ¶¶ 8–9.) POL Lending performed its obligations under the promissory note, guaranty, and mortgage. (*Id.* ¶¶ 30–31.)

8

Mayfair and Mr. Wiggins failed to make any principal, interest, or other payment under the promissory note. (*Id.* ¶ 32.) Mayfair and Mr. Wiggins had ten days from March 31, 2017, to cure their default but failed to do so. (*Id.* ¶¶ 34–35.) And from this default, POL Lending has accrued $1,179,993.33 in damages as of November 16, 2017. (*Id.* ¶ 36.)

Because there are no genuine issues of material fact and POL Lending is entitled to judgment as a matter of law, the Court grants POL Lending summary judgment against Mayfair and Mr. Wiggins on its breach of note and breach of guaranty claims.

### 2. Mortgage Foreclosure

To prevail on its mortgage foreclosure claim, POL Lending must establish "(1) the movant is the holder of the note and mortgage, or is a party entitled to enforce the instrument; (2) if the movant is not the original mortgagee, the chain of assignments and transfers; (3) the mortgager is in default; (4) all conditions precedent have been met; and (5) the amount of principal and interest due." *Deutsche Bank Nat'l Trust Co. v. Dowd*, Sixth Dist. Erie No. E-13-043, 2015-Ohio-3799, ¶ 11.

The undisputed facts again establish POL Lending's entitlement to summary judgment. POL Lending is the original mortgagee and the holder of the promissory note and mortgage. (Pl.'s Statement of Facts ¶¶ 7–9, 14, 31, ECF No. 57.) Mayfair and Mr. Wiggins are in default. (*Id.* ¶¶ 32–35.) The conditions precedent have all been met. (*Id.* ¶¶ 30–31.) And POL Lending has shown that the total amount due and owing under the promissory note as of November 16, 2017, is $1,179,993.33. (*Id.* ¶ 36.)

There are no genuine issues of material fact and POL Lending is entitled to judgment as a matter of law. The Court will therefore grant POL Lending summary judgment on its mortgage foreclosure claim.

## B. Treasurer of Delaware County, Ohio

The Treasurer seeks summary judgment on his cross-claim to foreclose on the Property. (Treasurer Mot. for Summ. J. at 1, ECF No. 58.) Under O.R.C. § 5721.18,

> [t]he county prosecuting attorney, upon the delivery to the prosecuting attorney by the county auditor of a delinquent land or delinquent vacant land tax certificate, or of a master list of delinquent or delinquent vacant tracts, shall institute a foreclosure proceeding under this section in the name of the county treasurer to foreclose the lien of the state, in any court with jurisdiction . . . unless the taxes, assessments, charges, penalties, and interest are paid prior to the time a complaint is filed, or unless a foreclosure or foreclosure and forfeiture action has been or will be instituted under section 323.25, section 323.65 to 323.79, or section 5721.14 of the Revised Code.

Foreclosure proceedings on a tax lien are generally instituted and prosecuted in the same manner as is provided by law for the foreclosure of mortgages. *See* O.R.C. § 5721.18(A); *see also id.* § 323.25; *Rokakis v. W. Res. Leasing Co.*, Eighth Dist. Cuyahoga No. 95058, 2011-Ohio-1926, ¶ 12. "The certificate or master list filed by the auditor with the prosecuting attorney is prima-facie evidence at the trial of the foreclosure action of the amount and validity of the taxes, assessments, charges, penalties, and interest appearing due and unpaid and of their nonpayment." O.R.C. § 5721.18(A); *see also id.* § 5721.18(B)(3).

The Treasurer supports his motion for summary judgment with an affidavit from the Delaware County Deputy Treasurer and a Tax Detail Report. (Treasurer Mot. for Summ. J. at 3–4.) These documents establish that Mayfair owes, as of January 17, 2018, $21,772.98 in delinquent, past due, and owing property taxes, interest, assessments, and penalties on the Property. (Bendle Aff. at 1–2, ECF No. 58-2; Tax Detail Report at 1–2, ECF No. 58-2.)

The Treasurer's evidence is undisputed and entitles him to judgment as a matter of law. The Court therefore grants the Treasurer summary judgment on his foreclosure cross-claim.

### C. Omega Federal Credit Union

Omega has also moved for summary judgment on its mortgage foreclosure claims. (*See* Omega Mot. for Summ. J. at 1, ECF No. 59; Omega Answer at 10, 16, ECF No. 25.)

Omega has produced undisputed evidence establishing that it is the original mortgagee and the holder of the promissory notes and mortgages, that the Wigginses are in default, and that the conditions precedent have all been met. (*See* McCaslin Aff. ¶¶ 3–6, ECF No. 60; First Mortgage at 5, ECF No. 25-1; Second Mortgage at 5–6, ECF No. 25-3; Prelim. Judicial Report at PageID 190, 192–93, ECF No. 3; July 7, 2017 Ltr. at 1, 5–6, ECF No. 25-5.) Omega's undisputed evidence also establishes the amount of principal and interest due under the notes as of January 19, 2018—$234,601.74 on the First Note and $786,525.81 on the Second Note. (McCaslin Aff. ¶¶ 8–9.)

Given that there are no genuine issues of material fact and that Omega is entitled to judgment as a matter of law, the Court will grant Omega summary judgment on its mortgage foreclosure claims.

### D. Priority of Interests

Because it has determined that POL Lending, the Treasurer, and Omega are each entitled to summary judgment and foreclosure on the Property, the Court now considers the priority of each of their claims.

"Ohio mortgage priority law can be summarized as 'first in time, first in right.' In other words, the first mortgage recorded will generally have priority over a subsequent recorded mortgage." *Home Sales Inc., of Delaware v. Burris*, Fourth Dist. Hocking No. 10CA6, 2011-Ohio-3359, ¶ 8 (citing O.R.C. § 5301.23(A)). This general rule does not apply to tax liens though. Under O.R.C. § 5721.10, the state's lien for taxes included on the delinquent land list

11

takes precedence over a mortgage regardless of when the mortgage was recorded. *Williams v. Schneider*, 2018-Ohio-968, -- N.E.3d --, ¶ 93 (8th Dist. 2018).

Here, under § 5721.10, the Treasurer's lien has first priority. Omega's mortgages are next in line. (*See* Prelim. Judicial Report at PageID 189–90, ECF No. 3.) And POL Lending's mortgage, which was filed last, has the lowest priority. (*See id.*)

### III.

For the reasons stated above, the motions for summary judgment filed by POL Lending, the Treasurer, and Omega (ECF Nos. 55, 58, 59) are **GRANTED**. The Court **DIRECTS** those parties to file a joint proposed judgment entry and decree of mortgage foreclosure and sale on or before **JULY 6, 2018**.

**IT IS SO ORDERED.**

6-27-2018
**DATE**

**EDMUND A. SARGUS, JR.**
**CHIEF UNITED STATES DISTRICT JUDGE**